IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00292-MR

| | |
|---|---|
| MICHAEL JOSEPH BULLUCK, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL MARTIN, et. al., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 18].

**I.     PROCEDURAL BACKGROUND**

On October 9, 2020, Plaintiff Michael Joseph Bulluck ("Plaintiff"), proceeding *pro se,* filed this action pursuant to 42 U.S.C. § 1983 for the violation of right to be free from cruel and unusual punishment. [Doc. 1]. In his unverified Complaint, Plaintiff names Michael Martin and Larry Earl,[1] identified as Officers at the Haywood County Sheriff's Department ("Sheriff's Department"), as Defendants in their individual and official capacities. Plaintiff's Complaint survived initial review.  He alleges that, on January 2,

---

[1] Defendant Larry Earl's true full name is Clifford Earl Johnson.  [Doc. 19-2].  The Court will instruct the Clerk to update the docket in this matter accordingly.

2020 at approximately 8:00 a.m., while held at the Haywood County Jail (the "Jail"), he was taken in handcuffs to a cell in the booking area that was unsanitary. Because Plaintiff did not want to go into the cell, Defendants "slammed [Plaintiff] against the wall," causing Plaintiff's face to hit and bounce off the wall. Plaintiff's legs were "took out from under [him]," causing him to fall while handcuffed. Plaintiff's eye was "split wide open," and he landed on his "rectal area." [Doc. 1 at 5]. For injuries, Plaintiff alleges he suffered bruising around his left eye, occasional blurriness, and scars on his wrists from the handcuffs. [Id.].

On July 1, 2021, Defendants filed a Motion for Summary Judgment. [Doc. 18]. Defendants argue that summary judgment should be granted because Defendants did not use excessive force on Plaintiff and because qualified immunity bars Plaintiff's claims against Defendants. [Id.]. In support of their summary judgment motion, Defendants submitted a brief and their own affidavits, which include a picture of Plaintiff immediately following the incident. [Docs. 19, 19-1, 19-2].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 20]. The Plaintiff was

2

Case 1:20-cv-00292-MR   Document 21   Filed 01/19/22   Page 2 of 11

specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Despite these instructions, Plaintiff did not respond to Defendants' summary judgment motion. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

3

Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party

must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

### III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

Defendant Martin and Defendant Johnson are and were at the relevant times Detention Officers at the Sheriff's Department. [Doc. 19-1 at ¶ 3:

5

Martin Aff.; Doc. 19-2 at ¶ 3: Johnson Aff.]. On the early morning of January 2, 2020, Plaintiff was being held in C-Pod of the Jail. [Doc. 19-2 at ¶ 5]. At approximately 6:00 a.m. that morning, Defendant Johnson entered C-Pod after observing another officer trying to address C-Pod inmates regarding their volume. [Id.]. When he entered C-Pod, Defendant Johnson saw Plaintiff speaking through his food pass. After being told to be quiet, Plaintiff asserted he had done nothing wrong. [Id.]. Several inmates yelled threats at Plaintiff, claiming they would assault him if they got the chance. [Id.]. Defendant Johnson and another detention officer went to Plaintiff's cell and repeatedly instructed him to face the wall and put his hands on the wall. Plaintiff refused. Defendant Johnson opened Plaintiff's cell door and took hold of Plaintiff's left arm and turned him to face away from Defendant Johnson. Plaintiff complied, placing his hands behind his back, and Plaintiff was handcuffed. [Id. at ¶ 6]. Defendant Johnson asked Defendant Martin to clean holding cell H-7 so that Plaintiff could be moved there. [Id. at ¶ 7]. Defendant Martin cleaned the cell as instructed. [Doc. 19-1 at ¶ 5].

When Plaintiff and Defendant Johnson arrived at holding cell H-7, Plaintiff refused to enter it. Defendant Johnson then led Plaintiff into the cell by Plaintiff's left arm. Plaintiff became increasingly combative. As he was being placed in the cell, Plaintiff attempted to turn and strike Defendant

Johnson with the back of his, Plaintiff's, head. Eventually, Defendant Johnson and Defendant Martin were able to get Plaintiff to the ground and under control. [Doc. 19-2 at ¶ 8; Doc. 19-1 at ¶ 6].

When on the ground, Plaintiff complained that his arm and penis hurt. Plaintiff had a small laceration over his left eye, which is depicted in a picture attached to Defendant Martin's Affidavit. [Doc. 19-2 at ¶ 9; Doc. 19-1 at ¶ 7; see Doc. 19-1 at 3]. The picture also shows swelling and bruising above Plaintiff's left eye. [See Doc. 19-1 at 3]. Defendant Johnson retrieved medical supplies and administrated first aid to Plaintiff after which Plaintiff did not complain further of pain. Plaintiff's handcuffs were removed, and he was served breakfast. [Doc. 19-2 at ¶ 9; Doc. 19-1 at ¶ 7]. Plaintiff reported that the disturbance in C-Pod was the result of Plaintiff having been the object of yelling and threats by other inmates throughout the previous night. [Doc. 19-2 at ¶ 10].

## IV. DISCUSSION

### A. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against

him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

Under these considerations, the uncontroverted evidence before the Court demonstrates that the force used on Plaintiff was reasonable and well within constitutional limits. Plaintiff was aggressive and combative and attempted to assault Defendant Johnson, presenting a sufficiently serious security problem. Defendants brought Plaintiff to the ground to regain control of Plaintiff. Plaintiff sustained a small cut to his eyelid and some swelling and bruising. Defendant Johnson administered first aid immediately following the incident and there is no forecast of evidence of any further

injuries or any further medical care sought by Plaintiff.  Thus, the force used on Plaintiff was necessary and objectively reasonable under the circumstances created by Plaintiff.  The forecast of evidence, therefore, does not support that Defendants used excessive force on Plaintiff.  As such, there is no genuine issue of material fact and Plaintiff's claim will be dismissed.[2]

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation."  E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

---

[2] Plaintiff's official capacity claims against Defendants also necessarily fail where there was no constitutional violation in the first place that could have flowed from a Sheriff's Office policy or practice.  See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985); Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 694, 98 S.Ct. 2018, 2037-38 (1978)).  They will be dismissed.

9

Case 1:20-cv-00292-MR   Document 21   Filed 01/19/22   Page 9 of 11

law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims. As such, summary judgment for Defendants would also be proper for Defendants on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.[3]

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 18] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is respectfully instructed to update the docket in this matter to reflect Defendant Larry Earl's true full name as Clifford Earl Johnson.

The Clerk is instructed to terminate this action.

---

[3] The Court notes that Plaintiff failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, before filing suit. Plaintiff asserts that he was not required to exhaust his administrative remedies because he was transferred from the Jail to Salisbury Correctional Institution the day after the incident. [Doc. 10]. Defendants do not address the issue. [See Docs. 18, 19]. The Court, therefore, declines to address it further.

**IT IS SO ORDERED**.

Signed: January 19, 2022

Martin Reidinger
Chief United States District Judge